# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORIS JIMENEZ, | 1:10-cv-01654-OWW-DLB (HC) |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | |
| J. HARVEY, | [Doc. 1] |
|     Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his conviction of second degree murder with a firearm enhancement. He is serving a sentence of seventeen years to life.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he contends the Board of Parole Hearings' (Board) December 15, 2008 decision finding him unsuitable for parole violated his due process rights. The superior court denied the petition in a reasoned decision.

Petitioner then filed a habeas corpus petition in the California Court of Appeal. The appellate court denied the petition finding some evidence supported the Board's decision.

///

1   Petitioner subsequently filed a petition in the California Supreme Court.  The petition was
2   summarily denied.
3       Petitioner filed the instant federal petition for writ of habeas corpus on September 13,
4   2010.  Respondent filed an answer to the petition on December 10, 2010.

STATEMENT OF FACTS

On March 28, 1989, Petitioner, armed with a sawed-off .22 caliber rifle, was sitting in the front of passenger seat of a car that was being driven down a street in Los Angeles.  As the vehicle passed some individuals standing by the street, Petitioner pointed the rifle out of the passenger window and fired up to four shots in their direction.  One shot hit Luis Antonio Gonzales in the head.  Mr. Gonzales died two days later.

Petitioner claimed that he just intended to scare the people and fired in their general direction.  He intended to fire just one shot but was not used to the semiautomatic feature of the rifle and it caused him to fire several shots.  He acknowledged that he and the victim were members of different gangs but denied that the crime was gang-related.

DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

Case 1:10-cv-01654-OWW-DLB   Document 14   Filed 01/13/11   Page 3 of 11

v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing

Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
> > (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> > (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> > (C) The victim was abused, defiled or mutilated during or after the offense.
> > (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> > (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous

  relationships with others.'

  (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

  (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

  (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

  Section 2402(d) sets forth the circumstances tending to show suitability which include:

  (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

  (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

  (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

  (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

  (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

  (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

  (7) Age. The prisoner's present age reduces the probability of recidivism.

  (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

  (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

  The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be

supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609. Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

6

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.   Last Reasoned Decision

The Los Angeles County Superior Court issued the last reasoned decision denying the petition stating, in pertinent part:

> The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on December 15, 2008. The Petitioner was denied parole for five years, which was later modified to three years on Marsy's Law grounds. See Exhibit 5 to the Petition for Writ of Habeas Corpus. The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on a number of factors, including the commitment offense, the Petitioner's institutional behavior, his unfavorable psychological report, and his lack of insight.
>
> The Court finds that there is some evidence to support the Board's finding that multiple victims were attacked, and one killed, in the same incident. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A). The Petitioner saw a group of individuals standing near the street. He pointed a sawed-off .22-caliber semiautomatic rifle in their direction and fired multiple times, striking and mortally wounding Luis Gonzales.
>
> The Board also found that the motive for the crime was very trivial in relation to the offense. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E). The Court finds that there is some evidence to support this finding. The record indicates that the Probation Officer's Report and the Petitioner's statement at the time of arrest indicate that the Petitioner and his fellow gang members discussed and identified a rival gang member. The Petitioner saw that person standing in a group of people and fired at them. One shot struck and mortally wounded Luis Gonzales, who was not the intended target. 2008 Board Hearing Transcript ("HT"), at pg. 70. The Petitioner's version is that he was only trying to scare the people and that his firing the gun was "a stupid stunt." PR. Pgs. 3-4. Regardless of whether the motive was gang rivalry or to scare, it was a trivial reason to shoot at a crowd of people on a public street with a semiautomatic rifle, an act that can foreseeably result in injury or death.
>
> After a long period of time, immutable factors, such as the commitment offense and prior criminal history, may no longer indicate a current risk of danger to society in light of a lengthy period of positive rehabilitation. See Lawrence, 44 Cal.4th at 1211. However, as discussed below, the Petitioner's institutional behavior and other factors considered by the Board also weigh against his suitability. In cases such as this one where other factors indicate a lack of rehabilitation, the aggravated circumstances of the commitment offense may provide some evidence of current dangerousness even decades after its commission. *Id*. at 1228.
>
> The Court finds that there is some evidence to support the Board's finding

7

that the Petitioner's institutional behavior weighs against his suitability. Cal. Code Regs., tit. 15, § 2402, subds. (c)(6) and (d)(9). As the Board noted, the Petitioner has taken vocational training but failed to complete any vocation during his 19 years of incarceration. HT, pgs. 25-26. His psychological report indicates a history of alcohol and drug use, but he has participated only sporadically in AA. HT, pg. 30. He had taken a Twelve Step correspondence course, but was unable to demonstrate any knowledge of the Twelve Steps. HT, pgs. 30-32. Despite that Twelve Step course and other self-help classes, he was unable to identify triggers for his substance abuse or provide a relapse prevention plan to forestall future substance or criminal behavior. HT, pgs. 46-48. Therefore, although the Petitioner has participated in some vocational training and self-help activities, he has failed to demonstrate significant or long-term gains. This indicates a need for further rehabilitation and is relevant to a determination of his suitability for parole. Cal. Code Regs., tit. 15, § 2402(b).

Additionally, the Court finds that there is some evidence to support the Board's finding that the Petitioner's 2008 psychological report is not supportive of release. The report noted that the Petitioner maintains that his murder sentence was unfair and that he should have been charged with manslaughter because he did not intend to kill the victim. In addition, it noted that the Petitioner has not identified any underlying causes for his involvement in gangs or ongoing criminal behavior. PR, pg. 8. The report concluded that the Petitioner's level of psychopathy is in the moderate range, his overall propensity for violence is in the moderate to low range compared to similar inmates, and his risk of general recidivism is in the low range. PR, pg. 7. While the psychological report, alone, may not justify a finding of unsuitability, the Board may properly consider it, as it is relevant to a determination of whether the Petitioner is suitable for parole. Cal. Code Regs., tit. 15, § 2402(b).

The Board found that the Petitioner lacked insight into the causative factors of his conduct relating to the commitment offense. HT, pgs. 73-74. The Court finds that there is some evidence to support this finding. As the psychological report noted, the Petitioner has not identified any underlying causes for his involvement in gangs or ongoing criminal behavior. PR, pg. 8. In addition, he minimized his conduct and the gravity of the commitment offense by maintaining that the crime was an "accident" or a "stupid stunt" and stating that he believes he should have been found guilty of manslaughter at the most and not murder. PR, pg. 4. This minimization indicates a lack of insight and a failure to take fully responsibility for his actions relating to the crime. The Board properly considered the Petitioner's lack of insight, as it is relevant to a determination of his suitability for parole. Cal. Code Regs., tit. 15, § 2281(b); *In re Shaputis*, 44 Cal.4th 1241, 1260.

The Board also considered the Petitioner's post-conviction gains. He has taken educational and self-help correspondence courses, and volunteered as an adult literacy tutor for other inmates. HT, pgs. 29, 32-34. He has received exceptional ratings for his job performance in the canteen. HT, pg. 30. However, after considering the Petitioner's post-conviction gains, the Board concluded that he would nevertheless pose an unreasonable threat to public safety. Penal Code § 3041(b). The Court finds that there is some evidence to support this determination, because the Petitioner's institutional behavior, psychological evaluation, and lack of insight provide a nexus between his commitment offense and his current dangerousness.

B. <u>December 15, 2008 Board Decision</u>

At the 2008 hearing, the Board found Petitioner to be an unreasonable risk to public safety if released based on the circumstances of the commitment offense, institutional misconduct, unfavorable psychological report, lack of vocational programming, and lack of insight into the causative factors of the commitment offense.

Petitioner committed the offense in an especially heinous, atrocious and cruel manner and multiple victims were attacked resulting in the death of one. Petitioner armed himself with a .22 semi-automatic rifle and positioned himself in the passenger's seat of the vehicle. They drove to the specific location where he believed the intended victim-a member of a rival gang-would be. As they passed the location, they turned the vehicle around and Petitioner fired four shots at the intended victim striking another victim in the head who died two days later. There were several individuals in the group when Petitioner fired the shots. Petitioner had an unstable social history evidenced by his membership in a gang at the age of 13 or 14.

Petitioner continues to minimize his involvement in the offense claiming it was a "tragic accident." This explanation is nonsensical given that Petitioner intentionally armed himself with a gun, drove to the specific location of the intended victim and fired several shoots at the group of rival gang members. Thus, it was reasonable for the Board to find that Petitioner lack insight into the causative factors of the offense, which was corroborated by the psychological evaluation. Cal. Code Regs., tit. 15, § 2402(b) (the Board may consider all relevant information, including the prisoner's past and present attitude toward the crime.)

Just three months prior to the commitment offense, Petitioner was convicted of assault and served jail time. This evidence was properly considered by the Board as a statutory factor in finding Petitioner unsuitable for release. Cal. Code Regs., tit. 15, § 2402(c)(2) ("The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.")

///
///
///

Petitioner has received five Serious Rules Violations (CDC-115) during his incarceration, the most recent in 2002 for tattooing.[1] Petitioner also received eight Counseling Chornos (CDC-128), the most recent in 1999 for refusal to work.[2] Serious institutional misconduct is a statutory factor which indicates unsuitability for release. Cal. Code Regs., tit. 15, § 2402(c)(6).

During his almost 19 years of incarceration, Petitioner has failed to complete a vocational program. In addition, the Board found he had not sufficiently participated in self-help and therapy programs. There is some evidence to support the Board's finding because despite having participated in some vocational programming, Petitioner failed to complete a single vocational program during his entire incarceration. Thus, Petitioner has not developed marketable skills and the Board reasonably found that he continues to be an unreasonable risk to public safety based on the lack of such programming. Cal. Code Regs., tit. 15, § 2402(d)(9).

The most recent psychological report authored by Dr. Richard Starrett is unfavorable and indicates that Petitioner presents a moderate to low risk to violently re-offend if released. Dr. Starrett opined that Petitioner "clearly needs to be involved in some type of counseling or group discussion in order to resolve the underlying issues of his criminal behavior and he discusses his ongoing belief that it is worth continued efforts to discuss the legal definition of this crime, that is, the need to present a stance that what he did was actually manslaughter despite his conviction for second degree murder." Such finding was properly considered by the Board and superior court as a factor in determining whether Petitioner remains a current risk to public safety. See e.g. Hayward, 603 F.3d at 563 (psychologist's evaluation that prisoner posed a "low to moderate" risk of future violence, coupled with evidence that offense was particularly aggravated, is sufficient evidence to demonstrate future dangerousness to support denial of parole.)

After considering the factors in support of suitability, the Board concluded that the positive factors did not outweigh the factors in support of unsuitability, and the superior court's determination that the commitment offense, institutional misconduct, unfavorable psychological

---

[1] A CDC-115 documents misconduct which is a violation of law or which is not minor in nature. 15 Cal. Code. Regs. § 3312(a)(3).

[2] A CDC-128 documents minor misconduct. 15 Cal. Code Regs. § 3312(a)(2).

report, lack of vocational programming, and lack of insight into the causative factors of the commitment offense demonstrate Petitioner continues to remain an unreasonable risk to public safety is not an unreasonable application of the some evidence standard, nor an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).

<u>RECOMMENDATION</u>

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.   The instant petition for writ of habeas corpus be DENIED; and

2.   The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 12, 2011**                     **/s/ Dennis L. Beck**
                                                  UNITED STATES MAGISTRATE JUDGE